UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff,**<br><br>v.<br><br>REY JADIEL RAMIREZ MEDINA,<br>**Defendant.** | Criminal No. 22-107 (PAD) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, through its undersigned counsel, respectfully submits this sentencing memorandum, seeking a Guidelines sentence of imprisonment of 51 *months* for Rey Jadiel Ramirez Medina. In addition, the government asks for a supervised release term of *3 years*.

I. **The offense conduct.**

Defendant entered a plea pursuant to a plea agreement to Count One, which charges:

"On March 8, 2022, at approximately 7:15 PM, Puerto Rico Police Police Bureau (PRPB) agents assigned to the Transit Unit of Manati, where patrolling road 148 km 12.1 and observed a grey Mazda bearing PR license plate IAF500 with tinted windows. PR.PB agents conducted a traffic stop on the abovementioned vehicle for violations to the PR traffic law.

PRPB agents exited the vehicle and ordered the driver to lower the windows. PR.PB agents approached the vehicle and asked the driver for his license. At the same time, another PR.PB agent approached the passenger side to measure the tinted windows. PR.PB agents smelled marihuana emanating from the vehicle and asked the occupants if they possessed, marijuana. The passenger later identified as Rey Jadiel RAMIREZ MEDINA stated that he had a cannabis license and began to search for his cannabis license.

1

While RAMIREZ MEDINA was searching for his cannabis license in his satchel bag, PRPB agents observed a firearm next to his feet. PRPB agents asked RAMIREZ MEDINA for the PR firearm license and RAMIREZ MEDINA responded that he did not have a PR firearms license. PRPB agents ordered both occupants to exit the vehicle. PRPB recovered the Glock pistol model 21 with serial number AEHU616 .45 caliber loaded with 13 rounds.

PRPB agents read the Miranda Rights to RAMIREZ MEDINA. RAMIREZ MEDINA waived his rights and stated that he was under supervised released and admitted ownership of the Glock pistol model 21, with serial number AEHU616, .45 caliber loaded with 13 rounds.

PRPB agents transported RAMIREZ MEDINA to the Manati Transit Unit precinct. PRPB agents contacted ATF Agents about the case of RAMIREZ MEDINA and ATF Agents responded to the PRPB Manati Transit Unit precinct. PRPB agents seized the following items belonging to RAMIREZ MEDINA:

        a. Glock pistol model 21 with serial number AEHU616, .45 caliber loaded with 13 rounds.
        b. One (I) Lacoste satchel bag.
        c. One (1) medium bag containing green leafy substance, field tested positive for marihuana.
        d. One (1) small storage container containing green leafy substance, field tested positive for marihuana.
        e. One (1) Samsung cell phone, and
        f. One (I) LG cell phone.

On March 8, 2022, ATF Agents advised RAMIREZ MEDINA of his Miranda Rights, which he read, understood, signed and waived. RAMIREZ MEDINA stated that he has been arrested before, served five (5) years in prison and is currently on supervised release relating to a federal firearms conviction. RAMIREZ MEDINA stated that he purchased the Glock pistol model 21 with serial number AEHU616, .45 caliber loaded with 13 rounds for protection.

RAMIREZ MEDINA stated that the PRPB agents observed the firearm while he was providing

his cannabis license, was ordered to get out of the vehicle and placed under arrest. RAMIREZ MEDINA also stated that he followed all the commands of the PRPB agent.

RAMIREZ MEDINA acknowledges that on March 8, 2022 he was subject to federal supervised release and he knew that as a convicted felon it was illegal for him to possess a firearm.

RAMIREZ MEDINA further acknowledges that the firearm and ammunition in this case are not manufactured in Puerto Rico, but transported to Puerto Rico through interstate or foreign commerce." ECF. No. 25 at pages 11-13.

## II. Guideline calculation.

Under USSG § 2K2.1(a)(7), the Defendant's base offense level is 20.[1] The Defendant has demonstrated acceptance of responsibility. Accordingly, the offense level is decreased by three levels pursuant to USSG § 3E1.1(a) and (b). The above calculation yields a total offense level of 17.[2] With a Criminal History Category of III, Defendant's guideline imprisonment range is therefore 30-37 *months*.[3]

## III. Defendant's background and characteristics.

Defendant is 26 years old.[4] He was born in Manati, Puerto Rico.[5] Defendant has multiple convictions resulting in a criminal history score of five.[6]

In the present case, Defendant pled guilty, and, during his interview with the probation officer, he accepted responsibility for the offense charged.[7]

---

[1] *See* PSR at ¶28.
[2] Id. at ¶36.
[3] Id. at ¶¶42, 70, and 71.
[4] Id. at ¶2.
[5] Id. at ¶46.
[6] Id. at ¶¶40-45.
[7] Id. at ¶¶ 25-26.

`

### IV. The social context of the offense.

The First Circuit has recognized the value of community-based factors in fixing a sentence. *See, e.g.*, *United States v. Flores-Machicote*, 706 F.3d 16, 23 (1st Cir. 2013) ("[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence."). In imposing its sentence, this Court may take in consideration the problem of gun violence in Puerto Rico. *See, e.g.*, *United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019). Particularly, the First Circuit has acknowledged the seriousness of gun-related violence in this District. *See United States v. Narvaez-Soto*, 773 F.3d 282, 286 (1st Cir. 2014) (describing "the [district] court's reasoned determination, predicated on its experience, that the incidence of violent crime—and, particularly, gun-related violent crime—is an acute problem in Puerto Rico"). Indeed, there is no doubt that "Puerto Rico is a hot spot for weapons." *United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019).

This Court is well aware of the firearm problem in Puerto Rico. All too frequently,

4

the residents of this District are bombarded with reports about firearm violence and murders in broad daylight. In 2020, it was reported that firearms are used in 90% of murders in Puerto Rico, a percentage that is double the world's average for the use of weapons in homicides (41.2%).[8] In 2020, firearm offenses constituted 11.7% of federal offenses prosecuted nationwide; they constituted 18.8% of offenses prosecuted in the District of Puerto Rico.[9]

The situation continues to be troubling. In 2019, San Juan was ranked as the second deadliest city in Latin America with 53.5 homicides for every 100,000 inhabitants.[10] "Given that authorities' attention has been focused on responding to the natural emergencies that Puerto Rico has faced over the last [several] years, the island has become [more] vulnerable to exploitation by gangs and transnational criminal organizations, which are using the island more and more as a stopover point for drug shipments."[11] Citizens now live in a dual fear: falling victim to violence or succumbing to the next disaster.

---

[8] *See* Kemuel Delgado, *Gun Violence in the US and Puerto Rico: This Can No Longer Continue!*, POLITICS TODAY (Feb. 25, 2021) (https://politicstoday.org/gun-violence-in-the-us-and-puerto-rico-this-can-no-longer-continue/).

[9] *See* U.S. Sent'g Comm., Statistical Information Packet, Fiscal Year 2020, District of Puerto Rico (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district- circuit/2020/pr20.pdf).

[10] *See* Maria Alejandra Navarette & Anastasia Austin, *Capital Murder: 2019 Homicide Rates in Latin America's Capital Cities*, INSIGHT CRIME (Mar. 5, 2020) (https://www.insightcrime.org/news/analysis/2019-homicides-latin- america-capital).

[11] *Id.*

`

The social context in Puerto Rico plagued with reports of firearms violence requires an appropriate sentence in the instant case.

V.     **The need for adequate deterrence**.

"[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence." *United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019) (quoting *United States v. Flores-Machicote*, 706 F.3d 16 (1st Cir. 2013). Appropriate sentences for gun-related offenses have a deterrent effect. *See United States v. Martinez,* 184 F. Supp. 3d 1209, 1238 (D.N.M.), *aff'd,* 660 F. App'x 659 (10th Cir. 2016) ("[R]esearch strongly indicates that increases in sentence length have at least some general deterrent effect—especially for criminals facing shorter sentences."); David S. Abrams, *Estimating the Deterrent Effect of Incarceration Using Sentencing Enhancements*, 4 AM. ECON. J.: APPLIED ECON. 32 (2012) (empirical study finding that increased sentences for gun-related offenses decrease certain gun violence).

Given Puerto Rico's particular problems with firearms and violence, an appropriate sentence is warranted to deter this Defendant and others from committing similar offenses.

VI.    **The need to protect the public from further crimes of the defendant.**

According to a 2019 report by the United States Sentencing Commission,[12] firearms offenders recidivated at a higher rate than non-firearms offenders. This study also found:

---

[12] *See* U.S. Sent'g Comm., *Recidivism Among Federal Firearms Offenders* (June 2019) (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf).

6

`

- "Over two-thirds (68.1%) of firearms offenders were rearrested for a new crime during the eight-year follow-up period compared to less than half of non-firearms offenders (46.3%)."[13]

- "Firearms offenders recidivated more quickly than non-firearms offenders. Of the firearms offenders who recidivated, the median time from release to the first recidivism event was 17 months. Comparatively, the median time from release to the first recidivism event for non-firearms offenders was 22 months."[14]

- "A greater percentage of firearms offenders were rearrested for serious crimes than non-firearms offenders. Of the firearms offenders who recidivated, assault was the most serious new charge for 29.0 percent, followed by drug trafficking (13.5%) and public order crimes (12.6%). Of the non-firearms offenders who recidivated, assault was the most common new charge for 21.9 percent, followed by public order crimes (19.4%) and drug trafficking (11.1%)."[15]

- "Firearms offenders have higher recidivism rates than non-firearms offenders in every Criminal History Category. The difference in recidivism rates between firearms and non-firearms offenders is most pronounced in Criminal History Category I, the lowest Criminal History Category, where firearms offenders recidivated at a rate approximately 12 percentage points higher than non-firearms offenders (45.0% compared to 33.2%)."[16]

- "Firearms offenders appear to desist from criminal activity later in life than non-firearms offenders—firearms offenders continued to recidivate at a high rate until reaching age 50 at the time of release from prison. Even after age 50, firearms offenders recidivated at nearly double the rate of non-firearms offenders in the same age group."[17]

The high rate of recidivism among firearm offenders supports the Court imposing an appropriate sentence in order to protect the community from future offenses by Defendant.

---

[13] *Id*. at p. 4.
[14] *Id*.
[15] *Id*.
[16] *Id*.
[17] *Id*. at p. 48.

7

`

**VII.    Recommendation**.

In order for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; the United States recommends that this Court sentence defendant to 30 *months* of imprisonment and impose a supervised release term of 3 years on Cr. 22-107 (PAD). The sentence is to be served consecutively to a recommended sentence at the low end of the range of imprisonment for the revocation on 17-073-01 (PAD). ECF. No. 25 at page 4.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 4th day of April 2023.

W. STEPHEN MULDROW
UNITED STATES ATTORNEY

*/s/ Luis Angel Valentin*
Luis Angel Valentin, G03115
Assistant United States Attorney
United States Attorney's Office
Torre Chardon, Suite 1201
350 Carlos Chardon Ave.
San Juan, PR 00918

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Luis Angel Valentin*
Luis Valentin, G03115
Assistant United States Attorney